# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MANUEL VICTOR GONZALES,

                Petitioner,               Case Number: 06-CV-10191
                                               HONORABLE GERALD E. ROSEN

v.

LLOYD RAPELJE,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Manuel Gonzales' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for second-degree murder, possession of a dangerous weapon with unlawful intent, possession of a firearm by a felon, and felony firearm on the grounds that he was denied his right to counsel of choice, his attorney had a conflict of interest, that he was twice placed in jeopardy for the same offense, his sentence was unlawfully increased, the prosecutor committed misconduct, and his trial and appellate attorneys were ineffective. The Court denies the petition.

## I. Facts

Petitioner's convictions arise out of events that occurred on July 4, 2001, in Saginaw, Michigan, leading to the death of Jake Lawrence Stark. Deangelo Kelly testified that he lived with his mother, siblings, and his step-father Stark. Kelly testified

that, on July 4, 2001, Petitioner, who is Kelly's cousin, and several other guests, were at the Stark home barbequing.  At some point, Petitioner and Stark argued when Petitioner lit a cigar inside the home.  Stark pushed Petitioner, hitting him in the eye.  Petitioner then left the Stark home.  Stark became angry and ordered everyone to leave the home, threatening to shoot anyone who did not leave.

Approximately ten minutes later, Petitioner returned holding a gun which was wrapped in a white towel.  Petitioner fired once, hitting the barbeque grill.  He then approached a vehicle in which Stark was seated and started shooting.  Stark tried to exit the vehicle and fell to the ground.  Petitioner fled.

Bryant Wilbert (Stark's grandson), who was nine years old at the time of the shooting, testified that he witnessed Petitioner and Stark argue on the day of the shooting. A few minutes before the shooting, Wilbert saw Petitioner across the street.  Petitioner approached the home quickly, shooting, while moving toward the car where Stark was seated.

Dr. Kanu Virani testified that Stark died from gunshot wounds to his abdomen.

Police Officer Danny McDone testified that he responded to the 911 call regarding a shooting on Johnson Street.  Someone in the crowd informed him that Petitioner had been the shooter.

Petitioner testified in his own defense.  He admitted to bringing a .22 caliber weapon, wrapped in a towel, to Stark's home.  He testified that he carried it for protection because Stark often bullied him.  He believed that Stark was going to his vehicle to

retrieve a gun and would kill him.  He fired shots at Stark because he was afraid.

## II.  Procedural History

Petitioner originally pleaded guilty but mentally retarded in Saginaw County Circuit Court to second-degree murder, possession of a dangerous weapon with unlawful intent, possession of a firearm by a felon, and felony firearm.  In exchange for the plea, the charge of first-degree murder would be dismissed.  Petitioner later filed a motion to withdraw his plea, which the trial court granted and a jury trial was held.  Petitioner was convicted of second-degree murder, possession of a dangerous weapon with unlawful intent, possession of a firearm by a felon, and felony firearm.  On November 7, 2003, he was sentenced to thirty to fifty years imprisonment for the murder conviction, three to five years imprisonment for the carrying-a-dangerous-weapon conviction, three to five years imprisonment for the felon-in-possession conviction, and two years imprisonment for the felony-firearm conviction.

Petitioner did not timely request appointment of counsel to file a claim of appeal. He, therefore, lost his appeal of right.  Petitioner filed a motion for new trial in the trial court, which was denied.  *People v. Gonzales*, No. 01-20393-FC-2 (Saginaw County Circuit Court Sept. 28, 2004).  Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, presenting the following claims:

I.      Defendant was deprived of his Ams. V and XIV rights of due process and his Am. VI right to counsel of his choosing when the Court required him to proceed with counsel who was associated with a conflict of interest.

II.      Defendant was deprived of his Ams. V and XIV rights of due process and

3

his Am. VI right to effective assistance of counsel, when counsel failed to recuse himself.

III.     Defendant was deprived of his Ams. V and XIV rights of due process when he was deprived of his right to be free from double jeopardy.

IV.     Defendant contends that he was denied his Ams. V and XIV rights to due process when he received an increased minimum sentence based upon exercise of his right to trial.

The Michigan Court of Appeals denied leave to appeal. *People v. Gonzales*, No. 258799 (Mich. Ct. App. Apr. 6, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Gonzales*, 474 Mich. 933 (Mich. 2005).

Petitioner then filed a petition for a writ of habeas corpus, presenting the same claims presented to the state courts.[1] The Court appointed counsel to represent Petitioner. On June 25, 2008, the Court issued an order staying and administratively closing the habeas proceeding to allow Petitioner to file a motion for relief from judgment in the state trial court.

Petitioner raised the following claims in his motion for relief from judgment: (i) trial counsel was ineffective in failing to advise Gonzales of his conflict of interest until the day of trial and failing to withdraw as counsel, allowing Gonzales to withdraw his guilty plea, failing to object to the prosecutor's improper cross-examination, and failing to

---

[1] The petition was originally assigned to the Honorable Arthur J. Tarnow. It was reassigned to the undersigned district judge on January 29, 2015.

4

investigate and present mitigating facts; (ii) prosecutor committed misconduct by eliciting testimony from Gonzales regarding prior juvenile convictions; and (iii) appellate counsel was ineffective, which establishes cause for failure to raise these issues in prior appeal. The trial court denied the motion. *People v. Gonzales*, No. 01-020393-FC-2 (Saginaw County Cir. Ct. Feb. 23, 2009).

The Michigan Court of Appeals denied Gonzales's application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Gonzales*, No. 293876 (Mich. Ct. App. Jan. 14, 2010). The Michigan Supreme Court also denied leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Gonzales*, 487 Mich. 853 (Mich. July 26, 2010).

Gonzales then moved for the Court to reopen this habeas proceeding, which the Court did. Gonzales raises these claims in his habeas corpus petition:

I.     Petitioner was deprived of his V and XIV Amendment rights of due process and his VI Amendment rights to counsel of his choosing when the court required him to proceed with counsel who was associated with a conflict of interest.

II.    Petitioner was deprived of his V and XIV Amendment rights of due process and his VI Amendment rights to effective assistance of counsel when counsel failed to recuse himself.

III.   Petitioner was deprived of his V and XIV Amendment rights of due process when he was deprived of his right to be free from double jeopardy.

IV.    Defendant was denied his V and XIV Amendment rights to due process when he received an increased minimum sentence based upon exercise of his right to trial.

5

V.      Trial counsel was ineffective by (1) failing to properly disclose in a timely
        fashion to his mentally retarded client the fact that he and the prosecutor
        were step-brothers; (2) advising or allowing Petitioner to withdraw his
        guilty plea to a lesser included offense causing reinstatement of first-degree
        murder charges based upon a non-existent defense; (3) directing the
        prosecutor at trial to elicit testimony from Gonzales about his inadmissible
        prior drug and firearms convictions, thereby seriously prejudicing Petitioner
        in the eyes of the jury; and (4) failing to investigate or present existing
        mitigating facts at trial or at sentencing.

VI.     Prosecutorial misconduct rendered the trial fundamentally unfair where he
        elicited statements from Petitioner regarding his prior juvenile firearm and
        felony drug convictions even though Petitioner had stipulated to a prior
        felony conviction to satisfy that element of the felon in possession charge.

VII.    Appellate counsel was constitutionally ineffective for failing to properly
        raise Petitioner's claim of ineffective assistance of counsel and omitting a
        prosecutorial misconduct claim on appeal.

Respondent filed an answer contesting the merits of the petition, and raising a

procedural default defense for several of the issues.  The Court finds it unnecessary to

address the question of procedural default.  It is not a jurisdictional bar to review of the

merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal

courts are not required to address a procedural-default issue before deciding against the

petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ( citing

*Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  Application of a procedural bar would

not affect the outcome of this case, and it is more efficient to proceed directly to the

merits.

### III.  Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty

6

Act of 1996 ("AEDPA").  Under the AEDPA, a state prisoner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims –

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute

permits a federal habeas court to 'grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

(quoting *Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state

court's application of [Supreme Court] precedent 'unreasonable,' the state court's

decision must have been more than incorrect or erroneous.  The state court's application

must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations

omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp.

2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.  Discussion

### A.  Right to Counsel of Choice

Petitioner's first habeas claim argues that he was denied his right to counsel of choice by a conflict of interest arising because his retained attorney, E. Brady Denton, and the prosecuting attorney, James T. Borchard, became step-brothers when they were in their 40s.  On the morning of the day the trial commenced, Borchard advised the court that he and Denton were related by marriage.  The following colloquy occurred outside the presence of the jury:

> THE COURT:  For the record, developments on this. First of all, I think the record should reflect – counsel, feel free to interrupt me if I've misspoken anything.  Both the Borchards and Dentons were personal families, were friends for – since the –
>
> MR. DENTON:  It was before World War II.
>
> THE COURT:  And after Mrs. Denton became a widow and Judge Borchard became a widower, they married about 10, 12 years ago and Mr. Denton and Mr. Borchard were in their 40's.  And although they knew each other and you were social contacts during your youth, you didn't live together at any time or anything of this.  Have I stated anything –

9

MR. BORCHARD:   No, Your Honor.

MR. DENTON:          That's accurate, Judge.  But I would also say on behalf of the
                            defendant that it's his life that's on trial here and he is charged
                            with first-degree murder.  He feels uncomfortable about
                            having Mr. Borchard being the prosecutor in this case because
                            of our relationship.  I assured him that I didn't think there was
                            going to be anything that would interfere with my
                            responsibilities to him as his attorney or Mr. Borchard's
                            responsibilities as the prosecuting attorney.  Nonetheless, he
                            feels uncomfortable about it and he would like to make it
                            known and make it clear on the record that he does object to
                            Mr. Borchard being the prosecutor.

THE COURT:           The objection is noted.

MR. BORCHARD:   I would state for the record, Your Honor, that there are 400
                            other lawyers in Saginaw County and if Mr. Gonzales wants
                            some time to go hire a new lawyer, he can do that.  I don't
                            have any other problem with that but I will be on this case.

MR. DENTON:          He's got a right to counsel of choice, Your Honor, and the
                            prosecutor's office, it should be noted, has lawyers of whom
                            maybe there are two or three that are capable of doing this
                            case.

THE COURT:           Your objection is noted and we're going forward here. Bring
                            them in.

Tr, 9-9-03, at 6-8.

        The trial then proceeded.  Petitioner filed a motion for a new trial in the trial court

following his conviction, raising the claim that he was denied his right to counsel of his

choice when he was forced to proceed with counsel who had a conflict of interest.  The

trial court held that Petitioner's right to counsel was not impugned and that defense

counsel performed "far, far above the standards set forth in *Strickland v. Washington*, 466

10

U.S. 668 (1984)." 9/28/04 Opinion and Order at 1, *People v. Gonzales*, No. 01-20393-FC-2.

Petitioner also raised this claim on direct appeal in a delayed application for leave to appeal to the Michigan Court of Appeals. The Michigan Court of Appeals denied the application "for lack of merit in the grounds presented." *People v. Gonzales*, No. 258799 (Mich. Ct. App. Apr. 6, 2005). This decision, although brief, is entitled to full deference under the AEDPA. *Harrington,* 562 U.S. at 98-99. Petitioner, therefore, satisfies his burden only by showing "there was no reasonable basis for the state court to deny relief." *Id.*

The Sixth Amendment protects "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Here, Petitioner chose Mr. Denton to represent him and Mr. Denton represented him throughout the trial. Petitioner argues that his right to counsel of choice was compromised because, by choosing to proceed with Mr. Denton, he was forced to proceed with an attorney who was laboring under a conflict of interest. He further argues that the State should have substituted a different prosecutor for Mr. Borchard. As the Court discusses in detail below, Petitioner has failed to show that Mr. Denton labored under a conflict or interest or any resulting prejudice. In addition, while the Sixth Amendment protects a defendant's right to counsel of choice, the Court is aware of no Supreme Court (or, for that matter, any) precedent establishing that a defendant's right to counsel of choice extends to the right to choose a prosecutor.

11

Accordingly, where Petitioner was represented by the attorney he retained, Petitioner fails to show that the state court's decision denying this claim was contrary to or an unreasonable application of Supreme Court precedent.

## B.  Ineffective Assistance of Counsel Claims

In his second and fifth habeas claims, Petitioner raises several claims of ineffective assistance of trial counsel.  Specifically, he argues counsel was ineffective in: (1) failing to recuse himself based upon a conflict of interest; (2) failing to properly disclose in a timely fashion to his mentally retarded client the fact that he and the prosecutor were step-brothers; (3) advising or allowing Petitioner to withdraw his guilty plea to a lesser included offense causing reinstatement of first-degree murder charges based upon a non-existent defense; (4) directing the prosecutor at trial to elicit testimony from Gonzales about his inadmissible prior drug and firearms convictions, thereby seriously prejudicing Petitioner in the eyes of the jury; and (5) failing to investigate or present existing mitigating facts at trial or at sentencing.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at

12

687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

## 1.

First, Petitioner argues that his attorney was ineffective in failing to recuse himself based upon an alleged conflict of interest and failing to timely advise Petitioner of the conflict. A criminal defendant is entitled to the effective assistance of counsel free from conflict. *Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978). In *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980), the Supreme Court held that prejudice is presumed if counsel is burdened by an actual conflict of interest. The presumption of prejudice applies only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at

13

350, 348.  The Supreme Court, to date, has only applied the *Sullivan* presumption of

prejudice "in the case of a conflict of interest arising from multiple *concurrent*

representation of defendants."  *Jalowiec v. Bradshaw*, 657 F.3d 293, 314-15 (6th Cir.

2011).  Multiple concurrent representation "occurs where a single attorney

simultaneously represents two or more codefendants in the same or separate

proceeding(s), whereas successive representation occurs where defense counsel has

previously represented a co-defendant or trial witness."  *Id.*  at 315.

    The last reasoned opinion regarding this claim is the trial court's denial of

Petitioner's motion for relief from judgment.  The trial court denied this claim, holding:

> Before trial, a formal record was made of a relationship by affinity between
> the prosecutor and defense counsel that had been created when, well into
> their adulthoods, their parents decided to marry.  With this information
> disclosed, the Defendant's only objection was to the prosecutor's continued
> involvement in the case and not that of his own defense counsel.[] This
> position taken at trial belies the claim presented in the current motion,
> without any support, that there was a breakdown of the attorney-client
> relationship to the extent Defendant could no longer trust or confide in his
> counsel.  Moreover, the People point out this claim was previously raised in
> application for leave [to] appeal that was dismissed as lacking merit. . . .
> Indeed, there is no evidence to demonstrate that defense counsel "actively
> represented conflicting interests" throughout the trial and that this actual
> conflict adversely affected his performance.  Trial counsel is not ineffective
> for continuing to proceed with the representation of a client where the client
> wishes him to do so and has been made aware of the theoretical source of
> conflict.

2/23/09 Opinion and Order of the Court at 4, *People v. Gonzales*, No. 01-020393.

    Petitioner argues that defense counsel's relationship with the prosecuting attorney

created a conflict of interest which should have triggered defense counsel's withdrawal.

14

However, because this case does not involve multiple concurrent representation, no presumption of prejudice occurs. Instead, Petitioner must show an actual conflict of interest that adversely affected counsel's representation. *Mickens v. Taylor*, 535 U.S. 162, 173 (2002). Petitioner does not show that the relationship between the attorneys, which resulted when each of their surviving parents married later in life, created a conflict of interest. Petitioner also fails to point to any specific way in which counsel's performance was negatively impacted by the alleged conflict. His claims are based only upon speculation. Moreover, even assuming defense counsel's continued representation of Petitioner violated "ethical norms," such a violation "does not make the lawyer *per se* ineffective." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 18 (2013), citing *Mickens*, 535 U.S. at 171.

The state court's decision denying this claim was neither contrary to, nor unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to relief on this claim.

**2.**

Next, Petitioner claims that his attorney was ineffective in advising or allowing Petitioner to withdraw his guilty plea to a lesser-included offense causing reinstatement of first-degree murder charges based upon a nonexistent defense. The state court denied this claim, finding that Petitioner could not satisfy *Strickland's* prejudice prong because,

15

following the trial, he was convicted of the same offenses to which he had pleaded guilty. 2/23/09 Opinion and Order of the Court at 4-5, *People v. Gonzales*, No. 01-020393.

The decision whether to plead guilty "ultimately rests with the client." *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir. 2002), *citing Jones v. Barnes*, 463 U.S. 745, 751 (1983). The record shows that Petitioner clearly communicated his desire to withdraw his guilty plea to counsel. In addition, although Petitioner's claim of self-defense may not have been strong, it was not nonexistent. Petitioner testified that he carried a gun for protection and that, at the time he shot the victim, he was in fear for his life. He believed that the victim was reaching into his vehicle for a gun and that he needed to defend himself. There was also testimony that the victim informed everyone that, if they were not gone when he returned, he would shoot them all. Based upon the foregoing testimony, it was not unreasonable for defense counsel to plan to present a self-defense argument. In addition, as the state court noted, Petitioner was convicted of the same crimes for which he originally entered a plea. Therefore, no prejudice resulted and habeas relief is denied.

3.

Petitioner argues that his trial attorney was ineffective in directing the prosecutor at trial to elicit testimony from Gonzales about his inadmissible prior drug and firearms convictions. At trial, the parties stipulated that Petitioner had a prior felony conviction that barred him from possessing a firearm. Petitioner's prior qualifying felony was an element of the felon-in-possession charge. Petitioner argues that the prosecutor then,

16

improperly, inquired into the felony conviction during his cross-examination of Petitioner
and that counsel's response was ineffective:

Prosecutor:   You are a convicted felon, true?

Petitioner:   Yes, sir.

Prosecutor:   You knew it was illegal for you to own this gun, didn't you?

Petitioner:   Yes, sir.

Prosecutor:   You admit that you are a felon in possession of a firearm?

D. counsel:   We already stipulated to that, Judge.

The Court:   He can still ask the question.  Go ahead.

Prosecutor:   True?

Petitioner:   Pardon me?

Prosecutor:   You admit you are a felon in possession of a firearm?

Petitioner:   I was a juvenile.

Prosecutor:   You were a juvenile in 1997?

Petitioner:   Every gun case I can remember was juvenile.

Prosecutor:   Didn't ask you that.  You were convicted of a felony as an adult in
              1997, correct?

Petitioner:   What's – what was the charge?

Prosecutor:   We're not talking about the charge.  That's not allowed to be talked
              about.  I'm just asking you if that's the date.

Petitioner:   '97.  I don't recall.  If you could tell me the charge to answer your
              question.

17

D. counsel:   Go ahead and tell him the charges.  That's fine with me.

Petitioner:    Sure?

D. counsel:  Sure.

Prosecutor:   Were you convicted of selling cocaine on January 7th 1997?

Petitioner:    Yes, sir.

Prosecutor:   Thank you.  And was your sentence complete in October of 1999?

Petitioner:    Yes, sir.

Prosecutor:   So you knew it was illegal for you to own or possess a gun?

Petitioner:    Yes, sir.

Tr., 9/11/03 at 79-81.

The state court held that defense counsel's decision to allow the prosecutor to question the defendant with specific reference to the type of prior felony was not ineffective.  The court held that Petitioner "'let the cat out of the bag' with regard to his past convictions by offering non-responsive answers that volunteered information about a prior history of gun crime" and "also later requested that the prosecutor tell him which crime he was referring in order to provide an answer."  2/23/09 Opinion and Order of the Court at 5, *People v. Gonzales*, No. 01-020393.  The state court concluded that defense counsel's decision to depart from the stipulation was a reasonable trial strategy that evolved in response to his client's conduct on the stand.  *Id.*

The Court agrees with the state court's assessment that it was reasonable for defense counsel to conclude that allowing specific reference to the nature of the prior

18

felony would not be detrimental to Petitioner.  Counsel may reasonably have concluded that this was preferable to prolonging this line of questioning with Petitioner's non-responsive answers, which would only serve to highlight Petitioner's criminal history.  In addition, given the duration of the trial and the strength of the evidence against Petitioner, the Court finds no reasonable likelihood that this brief reference to Petitioner's prior drug-related conviction prejudice Petitioner.  Therefore, the state court's holding was not contrary to or an unreasonable application of *Strickland*.

### 4.

Finally, Petitioner argues counsel was ineffective in failing to investigate or present evidence of Petitioner's diminished capacity at trial or at sentencing.

The trial court denied this claim as follows:

> Defense counsel did not err at trial as diminished capacity due to mental retardation is not a defense in Michigan.  *People v. Carpenter*, 464 Mich. 223, 239 (2001).  Rather, "the Legislature has signified its intent not to allow evidence of a defendant's lack of mental capacity short of legal insanity to avoid or reduce criminal responsibility . . ." *Id.* at 241. "'Persons with less serious mental deficiencies should be accountable for their crimes just as everyone else.'" *Id.* at 239, n.9; quoting *Chestnut State*, 538 So.2d 820, 825 (Fla. 1989).  Therefore, the Court determines that defense counsel was not ineffective in failing to present evidence of mental retardation at trial.

> With regard to sentencing, it is well established that "[t]he decision to address the court at sentencing is a tactical one."  *People v. Hughes*, 165 Mich. App. 548, 550 (1987).  Assuming *arguendo*, that defense counsel was nevertheless obliged to address the Court concerning Defendant's mental condition, the Court notes it was previously made aware of the mental issue during the earlier plea proceedings.  Nor would it have altered Defendant's sentence given the evidence presented at trial and Defendant's assertion of a self-defense claim.  Therefore, the Court determines that Defendant was not

actually prejudiced by the alleged ineffective assistance of counsel at
sentencing.

2/23/09 Opinion and Order of the Court at 5-6, *People v. Gonzales*, No. 01-020393.

The Michigan Supreme Court abolished the diminished capacity defense in 2001,
based on its reading of Michigan Compiled Laws § 768.21a.  This Court cannot
second-guess the state court's construction of a state statute.  *White v. Howes*, 586 F.3d
1025, 1029 (6th Cir. 2009). Because Michigan no longer recognizes the diminished
capacity defense, the petitioner is unable to show that counsel was ineffective by failing
to pursue such a defense on the petitioner's behalf.  *Nields v. Bradshaw*, 482 F.3d 442,
456 (6th Cir. 2007). Therefore, the petitioner is not entitled to habeas relief on his
ineffective assistance of counsel claim.

In addition, because the trial court indicated that it was aware of Petitioner's
mental condition and any additional evidence would not have changed the sentence,
Petitioner cannot show he was prejudiced by counsel's failure to present evidence of his
diminished capacity at sentencing.

## C.  Vindictive Sentencing Claim

Petitioner argues that habeas relief is warranted because the trial court increased
his sentence to punish him for exercising his right to a jury trial.  Petitioner originally
pleaded guilty to second-degree murder, carrying a dangerous weapon with unlawful
intent, possession of a firearm by a felon, and felony firearm.  In exchange for the plea,
the first-degree premeditated murder conviction would be dismissed.

20

Petitioner moved to withdraw his plea, and the court granted the motion. Following his conviction, Petitioner was sentenced to 30 to 50 years' imprisonment for the second-degree murder conviction. He argues that, during a *Cobbs* hearing prior to trial, the trial judge indicated that if Petitioner pleaded guilty he would sentence him in accordance with the guidelines minimum sentence of 25 ½ years' imprisonment. Defense counsel argued at sentencing that the trial court was estopped from imposing a sentence greater than 25 ½ years. The trial court rejected this argument, stating: "I don't believe I'm estopped. I heard the testimony in this case. Quite frankly but for the efforts of counsel, you would be serving life without parole." Tr. 10/20/03 at 4. The trial court also denied this claim in its order denying Petitioner's motion for new trial because "[t]he evidence presented at trial provided additional information that was not known at the time of the Cobbs hearing and the sentence was within the guidelines." 9/28/04 Opinion and Order at 2, *People v. Gonzales*, No. 01-20393-FC-2.

A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. *See Wasman v. United States*, 468 U.S. 559, 568, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984); *North Carolina v. Pearce*, 395 U.S. 711 (1969). When the same judge applies a greater sentence after a defendant successfully appeals a first conviction, the presumption arises that the sentence is vindictive. *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969). To rebut that presumption, there must be objective information in the record justifying the increased sentence. *United States v. Goodwin*, 457 U.S. 368, 374

21

(1982).  "[T]he evil the [presumption of vindictiveness] sought to prevent" was not the imposition of "enlarged sentences after a new trial" but "vindictiveness of a sentencing judge." *Texas v. McCullough*, 475 U.S. 134, 139 (1986).  Thus, the presumption applies only in circumstances where there is a "reasonable likelihood" that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. *Alabama v. Smith*, 490 U.S. 794, 799  (1989).  The presumption of vindictiveness does not arise when the first sentence was based upon a guilty plea and the second follows a trial because a sentencing judge has considerably more relevant sentencing information after trial than is generally available when the defendant pleads guilty.  *Id.*  During trial, "the judge may gather a fuller appreciation of the nature and extent of the crimes charged."  *Id.*  In addition, a "defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation."  *Id.*

In this case, Petitioner's sentence followed a trial after a withdrawn guilty plea. Therefore, no presumption of vindictiveness arises and Petitioner offers no evidence of actual vindictiveness.  The record indicates that the trial court sentenced Petitioner within the guideline range and the statutory maximum.  The trial court considered the circumstances of the crime and other permissible factors at sentencing.  Petitioner has failed to establish that the trial court sentenced him based upon the exercise of his right to a jury trial.  Habeas relief is not warranted on this claim.

### D.  Double Jeopardy Claim

Petitioner argues that his convictions for possession of a dangerous weapon with

unlawful intent, possession of a firearm by a felon, and felony firearm violate the double jeopardy clause because they punish the same acts.

The Double Jeopardy Clause of the Fifth Amendment provides, "No person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." This clause affords defendants protection against three basic harms: second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense.[2] *Brown v. Ohio*, 432 U.S. 161, 165 (1977). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature . . . , the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." Ohio v. Johnson, 467 U.S. 493, 499 (1984). "Where . . . a legislature specifically authorizes cumulative punishment under two statutes for the same conduct, regardless of whether those two statutes prescribe the 'same' conduct, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

In determining whether the Michigan legislature intended to authorize cumulative punishments in the circumstances presented here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments."

---

[2] The Double Jeopardy Clause is made applicable to the states through the Due Process Clause of the Fifth Amendment. *Benton v. Maryland*, 395 U.S. 784 (1969).

23

*Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986); *see also McCloud v. Deppisch*, 409 F.3d 869, 874 (7th Cir. 2005) (holding that a federal court is "bound by" state court's interpretation of legislative intent). The Michigan courts have concluded that convictions for felon in possession and felony firearm arising out of the same incident do not violate the Double Jeopardy Clause because the legislature intended to impose multiple punishments. *See People v. Mitchell*, 456 Mich. 693, 698 (1998). In addition, the Michigan courts have held that the legislature intended to impose cumulative punishments for possession of a weapon with unlawful intent, felon in possession, and felony firearm. *See People v. MacMillan*, 95 Mich. App. 292, 294 (Mich. Ct. App. 1980). *See also Manning v. Jabe*, No. 92-1424, 1993 WL 15128, *2 (6th Cir. Jan. 26, 1996).

Because the Michigan legislature intended for there to be cumulative punishments for possession of a weapon with unlawful intent, felon in possession of a firearm, and felony firearm, Petitioner's convictions and sentences for these offenses do not violate the double jeopardy clause. *See White v. Howes*, 586 F.3d 1025 (2009) (holding that cumulative punishments for Michigan convictions for felon in possession of a firearm and possession of firearm during the commission of a felony did not violate double jeopardy).

Habeas relief is denied on this claim.

### E.  Prosecutorial Misconduct Claim

Petitioner argues that the prosecutor engaged in misconduct when he elicited testimony from Petitioner on cross-examination about the nature of Petitioner's prior felony. Petitioner argues that the prosecutor's questions violated the prosecutor's promise

24

that he would not question Petitioner regarding his prior felony conviction because Petitioner had stipulated that he was ineligible to carry a firearm.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, — U.S.—, 132 S. Ct. 2148, 2153 (June 11, 2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, — U.S. at —, 132 S. Ct. at 2155, quoting *Harrington*, 562 U.S. at 103.

The trial court issued the last reasoned state court decision denying this claim and held that the prosecutor did not elicit testimony from Petitioner about his prior felony conviction; instead, Petitioner volunteered the information in response to the prosecutor's simple yes or no question. 2/23/09 Opinion and Order at 7. The court, therefore, found no misconduct. "[T]he *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker*, — U.S. —, 132 S.Ct. at 2155, (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The trial court's decision was not contrary to or an unreasonable application of *Darden*. The

25

prosecutor's questions were narrowly tailored to respect the parameters of the stipulation. Additional information was volunteered by Petitioner and cannot fairly be attributed to prosecutorial misconduct. Habeas relief is denied on this claim.

### F. Ineffective Assistance of Appellate Counsel Claims

Finally, Petitioner raises a claim that his appellate attorney was ineffective in failing to raise claims raised in this habeas petition but not raised on direct appeal. He raises this claim in an attempt excuse the anticipated procedural default of certain claims. The Court determined that the interests of judicial economy were best served by addressing the merits of the defaulted claims. Nevertheless, the Court will briefly address the ineffective assistance of appellate counsel claim.

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims raised in this petition but not raised on direct review. Petitioner has failed to show that these claims were potentially meritorious. Therefore, he cannot show that his appellate attorney was ineffective for failing to raise the claims on direct appeal.

### V. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

26

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## VI.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is **FURTHER ORDERED** that a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  April 6, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 6, 2015, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

27